**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA AMBRIS, | ) | CASE NO.1:12CV774 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

## I.  ISSUE

This matter comes before the Court on Defendant's City of Cleveland and Khalid

Bahhur's Renewed Motion (ECF DKT # 14) to Dismiss Plaintiff's Second Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  PROCEDURAL HISTORY

On February 21, 2012, Plaintiff filed her Complaint in the Cuyahoga County Court of

Common Pleas against Defendants City of Cleveland, Department of Port Control Division of

Harbors, and Commissioner Khalid Bahhur, alleging, *inter alia*, a R.C. 4112 retaliation claim

1

and a 42 U.S.C. § 1983 Equal Protection claim.

On April 6, 2012, Defendants filed a Notice of Removal to United States District Court.

On April 26, Defendants filed their Motion to Dismiss, seeking to have Plaintiff's Complaint dismissed, arguing immunity, and that Plaintiff is not a member of a protected class, which Plaintiff opposed on May 10, 2012.

On July 3, 2012, pursuant to this Court's Order, Plaintiff filed her First Amended Complaint, in which she removed the Department of Port Control, Division of Harbors as a named party Defendant.

Due to inadvertently deleting a paragraph, Plaintiff filed her Motion for Leave to File *Instanter* Her Second Amended Complaint on July 11, 2012, which the Court granted on July 16, 2012.

On August 17, 2012, Defendants filed their Renewed Motion to Dismiss Plaintiff's Second Amended Complaint, which is identical to their April 26, 2012 Motion to Dismiss.

### III.  LAW AND ARGUMENT

**A.  Civil Rule 12(b)(6) Standard**

In deciding a motion to dismiss under R. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.  *Id.*, at 555... A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

2

not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geagua Park Dist.*, 499 F.3d 538,  541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**B.  Relevant Facts**

On or about November 1, 2007, Plaintiff was hired by Defendant City as Harbor Master for the Department of Port Control, Division of Harbors.  At all times during Plaintiff's employment, Defendant Bahhur was Defendant City's Commissioner and Plaintiff's supervisor. Despite Defendant City's clear policy, expressed in Cleveland Ordinance 663.02(a), prohibiting discrimination based on sexual orientation, Defendant Bahhur made sexually and racially

3

inappropriate and/or derogatory comments to Plaintiff and her co-workers, including:

    (a)    questioning Plaintiff's co-workers, on several occasions, about Plaintiff's sexual orientation and her female significant other;

    (b)    calling Ken Silliman, the Chief of Staff, "a queer" and "a faggot;"

    (c)    calling Linda Henrichsen, the City Planner, "a dyke;"

    (d)    referring to an openly gay City of Cleveland businessman as "a queer" and "a faggot;"

    (e)    calling Valerie McCall, the Chief of Government Affairs, who is African-American, a "nigger crack whore;"

    (f)    calling Dan Psimer, the Operations Manager, "white trash;" and

    (g)    using racial slurs when referring to and when speaking with African-American custodial employees Shirley Sellars and Vera Dyer.

From approximately 2009 to 2010, Plaintiff attended planning meetings and otherwise volunteered as a Defendant City representative to bring to Cleveland the 2014 Gay Games.  In early 2010, when Bahhur learned that the 2014 Gay Games had been confirmed to take place in Cleveland and would require the use of Defendant City's lakefront property, he made numerous derogatory comments to Plaintiff, such as, "I can't believe I have to be involved with those gays and dykes," and, "I can't wait to see those fags running up and down the lakefront."

In approximately September of 2010, Plaintiff reported Defendant Bahhur's sexually and racially motivated comments and conduct to Defendant City's Chief of Staff, Percy Dangerfield ("Dangerfield"), and requested that she be transferred out of Bahhur's department.  Dangerfield stated that he was "aware of the situation" and was in the process of "making changes."

4

Upon hearing that Plaintiff reported him to Dangerfield, Defendant Bahhur began to chastise Plaintiff for reporting him, and began micro-managing her work by, *inter alia*, requiring her to send all of her outgoing emails to him to review, and attempting to cancel a Defendant City event that Plaintiff had planned.

On October 25, 2010, Plaintiff again requested that Dangerfield transfer her out of Bahhur's department.  This time, Plaintiff alleges that no steps were taken to investigate or discipline Bahhur for his discriminatory conduct, and that she was not granted her request.

On November 8, 2010, two months after Plaintiff reported Bahhur, Dangerfield disciplined Plaintiff, gave her a Notice of Pre-Disciplinary Conference, and promptly placed her on paid administrative leave, allegedly for awarding a painting contract to A Room With A View Studio ("Studio"), a painting company owned by a relative of Plaintiff's significant other.

During the November 16, 2010 pre-disciplinary conference, Plaintiff presented evidence that would show that her actions involved no impropriety in granting her significant other's company the painting contract.  Plaintiff attempted to show that Studio's bid was the lowest bid, that Studio had worked with Defendant City in the past, that Defendant City was always satisfied with Studio's work, and that Studio's invoice had been reviewed and approved by Bahhur, Cleveland-Cuyahoga County Port Authority's Chief Financial Officer, Brent Leslie, and Cleveland Port Authority's Director, Ricky Smith.

Plaintiff alleges that, instead of discussing the policy that Plaintiff was accused of violating and Plaintiff's evidence showing no impropriety, the discussion focused on Plaintiff's sexual orientation and comments/inquiries regarding her significant other.

On January 4, 2011, Defendants took Plaintiff off paid administrative leave, and in lieu

5

thereof, imposed a thirty day unpaid suspension, allegedly for awarding the painting contract to Studio.

On February 8, 2011, within one hour of Plaintiff's return to work from her suspension, Dangerfield handed Plaintiff a second Notice of Pre-Disciplinary Conference, allegedly because personal documents had been found on Plaintiff's work computer during her suspension. Plaintiff was immediately placed on paid administrative leave.  The second pre-disciplinary conference for Plaintiff's second alleged infraction was scheduled for, and took place on, February 11, 2011.

During the February 11, 2011 pre-disciplinary conference, Plaintiff explained that any personal matters to which she attended while at work were done during her lunch break, not during her work hours.  Plaintiff further explained that almost all of Defendant City's employees use their work computer for personal matters.  Rather than inquiring about Plaintiff's alleged infraction, the disciplinary board focused again on Plaintiff's relationship with her significant other.

On February 18, 2011, Defendants fired Plaintiff, allegedly for awarding the painting contract to Studio and misusing her work computer.  Plaintiff alleges that her similarly situated heterosexual co-workers who engaged in the same or similar conduct as Plaintiff by utilizing their work computers for personal matters, were not terminated or even disciplined.

On or about October 11, 2011, Defendant City posted a job opening for Plaintiff's former position with a salary range up to $94,970.71, which is $18,970.71 more than Plaintiff was being paid at the time of her termination.

6

## C.  Defendants' Motion to Dismiss

Defendants seek to have the Court dismiss Plaintiff's Second Amended Complaint based on Defendant Bahhur's qualified immunity, Defendant City's statutory immunity under R.C. § 2744.02, failure to allege adequate facts against Defendant City of Cleveland pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978), and failure to allege a constitutional violation pursuant to 42 U.S.C. § 1983 and Title VII.

> 1.  *Plaintiff's Claim for Violation of Equal Protection Rights under § 1983, R.C. § 4112.02, and Title VII*

Plaintiff alleges that Defendant City, despite City of Cleveland Ordinance 663.02(a), engaged in a "systematic pattern of sexual orientation discrimination" by "fabricating policy/procedure violations allegedly committed by [homosexual employees]...but not by employees who are [heterosexual]" and by 'retaliating against [homosexual employees] who complain about or report discrimination."  Plaintiff alleges that Defendants discriminated against her based on her sexual orientation, and terminated her based on her sexual orientation, which she claims constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Cleveland's Ordinance 663.02(a).

Defendants claim that Plaintiff has failed to allege sufficient facts to show that Defendants have violated a constitutional right under 42 U.S.C. § 1983 because the Plaintiff has failed to allege that she is a member of a protected class.

The Sixth Circuit has noted several times that "the showing a plaintiff must make to recover on a disparate treatment claims under Title VII mirrors that which must be made to recover on an equal protection claim under § 1983." *Smith v. City of Salem, Ohio*, 378 F.3d 566

(6th Cir. 2004); See *Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000); *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988)(citing *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1011 (6th Cir. 1987)); *Daniels v. Bd of Educ.*, 805 F.2d 203, 207 (6th Cir. 1986); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) ("To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII.").

In order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly situated individuals outside the protected class. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). Defendant argues Plaintiff's claims, that she is not bringing a Title VII claim, is irrelevant as the framework for analyzing claims of intentional employment discrimination under Title VII is the same framework that is used under 42 U.S.C. § 1983. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988).

Defendant argues that Plaintiff has failed to meet her *prima facie* burden under the Title VII framework by failing to allege that she is a member of a protected class. Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from discriminating against an individual "because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a)(1). Sexual orientation is clearly absent from the protected classes listed in Title VII. Defendant also cites to a prior Sixth Circuit decision that held gay persons are not a protected class for equal protection purposes. *Preston v. Hughes*, 178 F.3d 1295 (6th Cir. 1999)

(unpublished table decision)(court affirmed dismissal of gay plaintiff's § 1983 claim as frivolous as it did not present a claim with an arguable or rational basis in law or fact).

Plaintiff, however, points to contrary, and more recent, Sixth Circuit precedent that would tend to show that the Sixth Circuit is *not* required to apply the Title VII framework in equal protection claims under § 1983.  The Sixth Circuit, in *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006), did not apply the Title VII framework to a case dealing with intentional employment discrimination.  Scarbrough alleged that the Defendant Board of Education violated the Equal Protection Clause when it refused to rehire Scarbrough as Director of Schools.  The Board allegedly was motivated by "animus" towards homosexuals, and refused to rehire Scarbrough because it was rumored that he was going to be giving a prayer in front of a primarily gay and lesbian congregation.

The Sixth Circuit stated that the "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision makers." *Id.*  After this threshold element is reached, the Sixth Circuit must determine what level of scrutiny to apply to the government's action.

Although the *Scarbrough* Court is not entirely clear about what the individual levels of scrutiny are, other courts have shown that there are three levels of scrutiny applied to § 1983 claims arising under the Equal Protection Clause of the Fourteenth Amendment.  The three levels of scrutiny are strict scrutiny, intermediate scrutiny, and rational basis review.  Decisions based upon race invoke strict scrutiny: the government action must be narrowly tailored to serve a compelling state interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

9

Gender classifications invoke the intermediate level of scrutiny: the action must be substantially related to an important government interest. *Id.* at 440-41. Sexual orientation classifications (and other classifications which are not considered "suspect" or "quasi-suspect") receive the lowest level of scrutiny: they need only be rationally related to a legitimate state purpose. *Washington v. Davis*, 426 U.S. 229 (1976); *Copeland v Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

The Sixth Circuit in *Scarbrough* acknowledged that strict scrutiny should not be applied in that case. *Scarbrough*, 470 F.3d at 261 ("Inasmuch as homosexuality is not a suspect class in this circuit, we cannot hold that persons who associate with homosexuals constitute a suspect class.") However, the Sixth Circuit applied a rational basis review of the Board's actions with regard to Scarbrough's termination. *Scarbrough* interpreted the rational basis test to mean:

> A government action is considered irrational only if it is "unrelated to the achievement of any combination of the legitimate purposes." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005). "The desire to effectuate one's animus against homosexuals [,however,] can never be a legitimate governmental purpose, [and] a state action based on that animus alone violates the Equal Protection Clause." *Stemler v. City of Florence*, 126 F.3d 856, 873-874 (6th Cir. 1997). A "plaintiff may demonstrate that the government action lacks a rational basis... either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711.

*Scarbrough*, 470 F.3d at 261. The court determined that Scarbrough carried his burden by offering "sufficient evidence to create a genuine issue of material fact as to whether Lively, Strand, and Spurling were motivated by animus against homosexuals." *Id.*

The troubling aspect with the *Scarbrough* case, and the Sixth Circuit's treatment of this area of the law in general, is that there is no mention of prior precedent when deciding to branch from the Title VII framework for employment discrimination claims. This may have been an

10

oversight by the Sixth Circuit in *Scarbrough* or a reflection of the current trend in the law, but it makes it much harder on the District Court to determine the outcome when the law is in such flux. If the Sixth Circuit has overruled the prior precedent of *City of Salem* with its decision in *Scarbrough*, then the Sixth Circuit must explicitly state it is doing so. As such, the Court is bound to apply the Title VII framework outlined in *City of Salem* until such precedent is expressly overturned by the Sixth Circuit alone.. Applying *City of Salem*, Plaintiff must allege sufficient facts to meet all four elements of a prima facie case under Title VII. Without such factual sufficiency, her complaint will be dismissed.

Plaintiff points to a case filed in the Southern District of Ohio that applied the Title VII framework and still allowed a person claiming sexual orientation discrimination in an adverse employment action to maintain a claim under § 1983 despite the fact he was not a member of a protected class. *Glover v. Williamsburg Local School Dist. Bd. of Educ.* 20 F.Supp.2d 1160 (S.D. Ohio 1998). In *Glover*, the plaintiff was hired to a one-year contract with option for renewal by the Defendant School District during the 1995-96 school year to fill a full-time teaching position. At all times, Barry Campbell, superintendent of Williamsburg School District, was aware of Glover's sexual orientation. *Id.* at 1162.

During the first semester, Glover was evaluated by Michael McEvoy, principal of Williamsburg Elementary School, in accordance with a common procedure of reviewing the performance of first-year teachers. *Id.* at 1163. During this evaluation, Glover received a positive evaluation in all categories except "Management of Student Behavior" and "Conformity with Professional Standards." *Id.* While "Management of Student Behavior" was poor because Glover relied on sending students to the principal's office too much rather than handling the

situation in class, Glover's poor "Conformity with Professional Standards" was due to a false rumor that Glover had held the hand of his partner at a holiday party. *Id.* at 1165. The rumor was eventually cleared up and Glover's evaluation was changed in order to reflect the falsity of the rumor.

During the second semester, however, McEvoy increased his observations of Glover from the required two to six observations during the semester. *Id.* It turns out that the increased observations were due to a parent's complaint about the unruly nature of Glover's classroom. According to protocol, Glover should have been notified of the community concern with his teaching style, but was never informed by McEvoy. *Id.*

At the end of the year, Glover's contract was not renewed. Instead, the school board decided to renew the contract of Theresa Whiteman, a fellow first-year teacher. In all of Whiteman's evaluations, she received a lower score than Glover, and, at one point during the year, lost control of the classroom to the point that one of her students had to be rushed to the hospital in an ambulance. *Id.* at 1166.

During an appeal of his non-renewal, Glover publicly claimed that the unfounded rumors caused the non-renewal. *Id.* at 1167. The Williamsburg School Board decided that it would uphold the non-renewal, based on, in their opinion, the fact that teachers should not publicly criticize their school districts. *Id.*

The Court first acknowledges that courts have dealt with government discrimination claims using three separate types of scrutiny: strict, intermediate, and rational basis. However, the court seems to apply the Title VII framework to Glover's case. *Id.* at 1170 ("Thus, Glover's discrimination claims, which are brought pursuant to both Ohio law and the Equal Protection

12

Clause, can be analyzed under the Title VII framework.").  The court explains the elements under a Title VII claim, which require that plaintiff: 1) be a member of a protected class, 2) that he was qualified for the position and the employer was accepting applicants, 3) that the plaintiff was rejected, and 4) that he was replaced by someone outside the protected class. *Id.* At first glance, the court seems to gloss over the first element of the Title VII analysis.

Earlier in the opinion, the court explained, "Homosexuals [are] not a 'suspect class' for equal protection analysis." *Id.* at 1169.  This should end the Title VII analysis, as Glover could not possibly carry his burden under Title VII.  However, the court claimed that while homosexuals may not be in a "suspect class:"

> Homosexuals... are entitled to at least the same protection as any other identifiable group which is subject to disparate treatment by the state. *See Stemler*, 126 F.3d at 874 ("[T]he principle would be the same if Stemler had been arrested discriminatorily based on her hair color, her college bumper sticker... or her affiliation with a disfavored sorority or company.")."

Using this rationale, the court claimed that Glover had plead a prima facie case under Title VII, despite never establishing that he was a protected class.

The outcome of the Southern District in *Glover* is entirely irrational.  The plaintiff clearly did not meet the prima facie burden under Title VII as he failed to show he was a member of a protected class.  *Glover* would essentially open up all persons and classes of persons to protection under Title VII, completely abrogating the first element of the Title VII analysis.  The Court refuses to take such an approach.  To do so would allow the judiciary to step into the shoes of the legislature and violate the doctrine of separation of powers upon which our government's infrastructure was founded.  Plaintiff has failed to meet her pleading burden under Title VII, and Defendant's Motion to Dismiss is granted.

13

2.      *Qualified Immunity of Defendant Bahhur*

If the Court were to find that the Plaintiff met her evidentiary burden under Title VII, her claim would still fail due to Defendant's qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified Immunity 'is an affirmative defense that must be pleaded by a defendant official.'" *Id.* at 815. But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Immunity ordinarily should be decided by the court long before trial." *Hunter*, 502 U.S. at 228 (citing *Mitchell*, 472 U.S. at 527-29). 'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. 511 at 526 (citing *Harlow*, 457 U.S. at 818). The issue of qualified immunity must be addressed at the earlier possible point in the litigation. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 819.

The Sixth Circuit applied a two-prong inquiry into whether defendant is entitled to qualified immunity. First, a court must ask whether the plaintiff suffered a violation of his constitutional rights. *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366 (6th Cir. 2002). Second, the court must ask if the constitutional right in question was a clearly established constitutional right of which a reasonable person would know. *Id.* Here, if we decided to follow *Scarbrough*

14

and determine that the plaintiff has plead a prima facie constitutional violation, our inquiry would turn to whether the existence of *Scarbrough* is enough to determine that Plaintiff's right to be free from discrimination based on her sexual orientation was "clearly established."  While the Sixth Circuit's most recent decision is *Scarbrough* and there have been cases, both in other circuits and the United States Supreme Court, that have showed a trend to giving homosexuals such protection, the heavily conflicting case law in the Sixth Circuit would tend to show that there is no "clearly established right."  The Courts have been all over the place with regard to treating such claims for disparate treatment based on sexual orientation, so it would be difficult to say that Defendant Bahhur knew, or should have known, that he was violating a clearly established right.

Plaintiff points to the United States Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620 (1996) for the proposition that Defendants should have been on notice that their actions violated Plaintiff's "clearly established rights."  In *Romer*, the U.S. Supreme Court struck down a Colorado state constitutional amendment that discriminated against Colorado citizens based on their sexual orientation.  Colorado voters adopted by statewide referendum "Amendment 2" to the State Constitution, which would preclude all legislative, executive, or judicial action at any level of state or local government designed to protect the status of persons based on their "homosexual, lesbian or bisexual orientation, conduct, practices or relationships." *Id.* at 620.  The Supreme Court stated: "If the constitutional conception of 'equal protection of the laws means anything, it must at the very least mean that a bare... desire to harm a politically unpopular group cannot constitute a legitimate government interest." *Id.* at 365.

*Romer* is distinguishable from the facts in the present case.  *Romer* was decided outside

of an employment context.  There is no mention of Title VII throughout the entire opinion, which this Court is required to implement in an employment discrimination analysis. See *City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004).  Were the facts to show that this discrimination happened outside of an employment context, the holding and analysis of *Romer* would serve to put Defendants on notice that their actions were violating a "clearly established right," as is required to negate qualified immunity.  However, there is no binding case law that would "clearly establish" Plaintiff's rights under this fact pattern, and as such, Defendants are entitled to qualified immunity.[1]

  2. Monell *claim fails for failing to plead sufficient plausible facts to show a "policy" or "custom."*

  Regardless of whether the Plaintiff has met her burden to plead a prima facie case of disparate impact or violation of her equal protection rights under § 1983, Plaintiff fails to state a claim upon which relief can be granted with regard to Defendant City of Cleveland.  Defendants argue that a municipality can only be held liable under § 1983 if Plaintiff alleges that she suffered harm as a direct result of the Defendant's "official policy or custom." *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008), *citing Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  More specifically, Defendant City of Cleveland argues that it can only be held liable if the Plaintiff alleges "an unconstitutional action that 'implements' or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers..." *Shamaeizadeh*, 338 F.3d at 556 (quoting *Monell*).  Defendants argue that

---

 [1] As the Court stated in its analysis above, the Court finds that *Glover* is not binding on this Court, and, in the alternative, the Court believes the analysis proffered in *Glover* is fundamentally incorrect.

Plaintiff has failed to allege any facts that could be interpreted to show that Defendant City of Cleveland had a policy or custom of discriminating against homosexuals.

Although it is not dispositive of Plaintiff's § 1983 claim, Plaintiff has failed to allege that Defendant Bahhur has final policy-making authority.  Any discriminatory acts Defendant Bahhur engaged in cannot be imparted upon the City.  *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1998).  Rather, Plaintiff must identify the policy, connect the policy to the Defendant City and Defendant Bahhur, and show that her constitutional injury resulted from the carrying out of the policy. *Bruederle v. Louisville Metro Government*, 687 F.3d 771, 777 (6th Cir. 2012).

Here, Plaintiff alleges that Defendant City had:

[E]ngaged in a systematic pattern and practice of sexual orientation discrimination, and retaliation, by, *inter alia*, fabricating policy/procedure violations allegedly committed by employees who are sexually oriented to members of their own sex, but not by employees who are sexually oriented to members of the opposite sex; refusing to enforce practices that have the effect of discriminating against employees on the basis of their sexual orientation by enforcing policies and disciplinary procedures against employees who are sexually oriented towards members of their own sex, but not towards employees who are sexually oriented towards members of the opposite sex; and retaliating against employees who are sexually oriented towards members of the same sex who complain about or report discrimination.

Plaintiff's allegations are conclusory statements, unsupported by the facts alleged in this Complaint.

While Plaintiff's situation could plausibly lead to the conclusion that *her own* constitutional rights have been violated by Defendant City, facts regarding her situation alone do not rise to the level of a "policy" or "custom" of the Defendant City.  There is no factual recitation that Defendant City has habitually discriminated against homosexuals in a similar fashion that the Plaintiff alleges.  Without such recitals, we have an isolated incident of alleged

17

discrimination and disparate impact that cannot, in itself, rise to the level of policy or custom. Plaintiff has failed to properly identify any well-established policy or custom of Defendant City to discriminate against homosexuals, and her claim against Defendant City under § 1983 must fail accordingly.

### IV.  CONCLUSION

Defendant's Motion to Dismiss is granted.  The Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims and remands Plaintiff's state law claims to Cuyahoga County Court of Common Pleas for further adjudication.

IT IS SO ORDERED.


s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  November 19, 2012

18